## Lattimer v. Johnson

*Leonard J. Frawley,* for plaintiff.
*Scott D. Pellinger,* for defendant.

MOTT, *J.,* March 13, 1992—

### HISTORY

The instant support action began on February 18, 1986, when Ms. Terry Lattimer (the plaintiff) filed a support complaint alleging that Mr. Jerry Johnson (the defendant) was the father of Douglas Brotzman, a minor child. The defendant contested the plaintiff's averments regarding paternity, and a trial was conducted, at which the defendant's paternity was established.

On January 14, 1992, a support conference was scheduled before a conference officer employed by the Bradford County Domestic Relations Office. Before the conference began, counsel for the defendant registered an objection to the plaintiff being represented by the same attorney who also serves as solicitor for the DRO. On the same day, January 14, 1992, the instant petition was filed.

By order dated January 14, 1992, upon consideration of the defendant's petition, this court issued a rule re-

turnable, and scheduled hearing thereon for January 16, 1992. Counsel for the defendant and the DRO solicitor both appeared before the court, and testimony was taken, with respect to the factual circumstances at issue. Oral arguments in support of the parties' respective positions were also presented. Both parties have submitted briefs, as well. The defendant's petition is now before the court for disposition.

## DISCUSSION

The defendant argues that the plaintiff's attorney of record must be disqualified from the instant case because his position as the DRO's solicitor cannot be reconciled with his current role as an advocate before the same body. The defendant contends that the DRO's solicitor's representation of an individual support claimant, along with his representation of the DRO itself, creates an impermissible appearance of impropriety.

The solicitor, on the other hand, argues that the DRO is obligated contractually to provide legal services to support claimants. Thus, he contends, the representation of support claimants is, effectively, part of his job. The solicitor then cites *Shah v. State Board of Medicine*, 139 Pa. Commw. 94, 589 A.2d 783 (1991), and concludes that under *Shah*, a "commingling of functions" may be permitted where no prejudice to the litigants occurs, and where the roles of adviser and prosecutor have been "adequately separated from the adjudicatory function." (Brief of Solicitor, p.5).

On our reading of *Shah*, however, it does not endorse dual representation of clients with potentially conflicting

interests, nor does *Shah* legitimate the representation of individual litigants before a judicial tribunal one also serves as legal adviser. *Shah* deals only with administrative procedure, and holds that the same counsel for an administrative agency may argue before the agency in opposition to a preliminary motion for supersedeas and advise the agency at a subsequent administrative hearing, as long as the counsel, in his preliminary argument, has not prejudiced the facts to be found at the hearing. *Shah* at 118, 589 A.2d at 796. Furthermore, in *Shah,* there was no question that the attorney was *always* representing the agency. Thus, the question in *Shah* only involved the amount of involvement one administrative agency's lawyer may have in a particular administrative proceeding.

In contrast, the instant case involved adverse parties whose rights and interests are to be initially determined by a branch of the court from the facts and evidence it is presented with, and which branch of court arguably has an obligation to avoid even the appearance of impropriety. Thus, we do not believe that anything in *Shah* authorizes the DRO's attorney to represent either of these parties before the DRO.

The solicitor explains his involvement in this particular case by asserting that he was instructed by the director of the DRO to represent the plaintiff here at the support conference "because of the existence of complicated legal issues." Curiously, the solicitor then describes as "minimal" the involvement of legal counsel at the support conference. This characterization of the solicitor's function is undoubtedly presented as a justification for his rep-

resentation of the plaintiff here. In essence, he is arguing that no prejudice can occur as a result of his alleged dual representation, since "matters of permanent significance are not considered" at a support conference. We wonder, however, why the busy solicitor would bother to appear, and why the DRO director would instruct him to appear at such a proceeding if it is, indeed, as perfunctory a matter as he now describes it. Accordingly, we conclude that significant rights of the litigants are at issue here, and the *potential* for prejudice to the defendant's interests, as a result of the solicitor's alleged dual representation, does exist.

At the hearing on this issue, conducted on January 16, 1992, the solicitor testified that he is, in fact, the DRO's solicitor, and that he does, indeed, regularly give legal advice to the DRO. Furthermore, he acknowledged that he participates in internal DRO staff meetings and in staff meetings conducted between the DRO and the court. He also affirmed that he had represented the plaintiff here during the paternity trial which preceded the instant support proceedings. Significantly, the director of the DRO, who also testified at the hearing, acknowledged that the solicitor in question does indeed act as the DRO's "attorney." The solicitor and the DRO director further affirmed that the solicitor does give legal advice to the DRO with respect to particular support cases, provided that the solicitor is not involved in these particular cases as an advocate for the claimant. Finally, the solicitor and the director testified that it is widely understood within the DRO that when a particular claimant is represented by the solicitor, the DRO "looks elsewhere" for its legal advice, relating to that *particular* case.

While it may well be widely understood within the DRO office itself that its solicitor is not to be consulted on certain issues involving certain claimants, the testimony taken on January 16, 1992, indicates nothing to assure us that the general public, or support defendants in general, would appreciate this distinction. A support defendant, in any given case, may understandably conclude that his interests are not being adequately protected, or that he will not get a fair "hearing," when he learns that the very attorney who represents the plaintiff at his support conference before the DRO, is the DRO's solicitor and routinely gives legal advice to the conference officer on support cases just like his. In such a situation, the defendant would be justified in assuming, even if his assumptions were not borne out by the facts, that the solicitor's endorsement of a particular factual or legal position may be accorded superior weight by the officer. "The test is not whether the court or other lawyers would view counsel's action as having the appearance of impropriety, but whether a layman would view the actions of ... counsel as having the appearance of impropriety." *Bennett v. Bennett,* slip op. to no. 84-15559, (C.P. Bradford 1984).

Thus, we would agree with the defendant that the solicitor's representation of the DRO and individual support claimants at conferences held before the DRO *does raise the appearance of impropriety.*

"In the case at bar, while we are not faced with a tribunal that has allegedly denied due process to a litigant, we are presented with a governmental body charged with certain decision-making functions that must avoid the *ap-*

*pearance* of possible prejudice, be it from its members or *from those who advise it or represent parties before it*. While no prejudice has been shown by this conflict of interest, it is our opinion that such a procedure is *susceptible* to prejudice and, therefore, must be prohibited." *Horn v. Township of Milltown,* 461 Pa. 745, 748, 337 A.2d 858, 860 (1975). (emphasis added)

In *Horn,* the Supreme Court held that there need not be a showing of actual harm to sustain a finding of denial of due process where the same solicitor represented a zoning hearing board and the township which opposed a particular application for a zoning variance. There, the attorney appeared as an advocate before the very board which he also represented as solicitor. The *Horn* decision was recently cited as controlling by the Commonwealth Court in *Newtown Board of Supervisors v. Greater Media Radio Co.,* 138 Pa. Commw. 157, 587 A.2d 841 (1991), where a township's solicitor served as legal adviser to the township's zoning board, and also represented the township at a hearing before that board, arguing against a company's application for a conditional use. The *Greater Media* decision states the following: "When a governing body is acting in this capacity [as a tribunal], it must adhere to the principle stated in *Horn* that it avoid not only actual bias, but also, even the appearance of bias or impropriety." *Id.* at 163, 587 A.2d at 844.

The instant situation presents a similar set of circumstances. The DRO's solicitor here represented a support claimant at a support conference held in front of a DRO conference officer. Thus, the DRO was acting as a tribunal at that conference. Although the conference officer may

understand that he or she is not to consult with the solicitor on the particular case before him or her, the officer may well have received legal advice from the solicitor with respect to similar issues raised in similar cases. Thus, it would appear to a layman observing the process that the DRO officer might accept the solicitor's position without questioning him. Plainly, such an appearance of impropriety must be avoided, under *Horn, supra,* and *Greater Media, supra.*

If anything, we believe the instant situation presents a *stronger* case for prohibition of the appearance of impropriety than does the *Horn* scenario. The DRO is a branch of this court, and therefore, it must be held to the standards of integrity expected from a judicial entity. These standards may well be higher than those commonly associated with governmental bodies, such as the zoning board, and the township, in *Horn.* The Code of Judicial Conduct provides as follows:

"Anyone, whether or not a lawyer, who is an officer of a judicial system performing judicial functions, including an officer such as a referee in bankruptcy, special master, court commissioner or magistrate, is a judge for the purpose of this Code. All judges should comply with this Code...." Code of Judicial Conduct, relating to compliance with the Code, following Canon 7.

Thus, we conclude for the purposes of the Code, that a DRO conference officer, who hears evidence and from that evidence makes a conclusion and recommends a support award to this court, is a judicial officer performing a judicial function. Therefore, he is subject to the Code, and Canon 2A of the Code provides, in pertinent part, the following:

"A [judicial officer] should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *Id.*

We believe that the instant case presents a threat to such public confidence because of the solicitor's intimate involvement with the DRO, which is performing a judicial function by conducting support conferences. The solicitor's close ties with the DRO raise the appearance of impartiality and impropriety. Thus, under the Code, the DRO should prohibit its solicitor from representing clients before the DRO conference officers.

Moreover, the representation attempted by the solicitor here could also be prohibited under the Rules of Professional Conduct. Rule 1.7 of those Rules provides, in pertinent part, the following:

"(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or third person, or by the lawyer's own interests, unless:

"(1) The lawyer reasonably believes the representation will not be adversely affected; and

"(2) The client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." Pa.R.C.P. 1.7(b).

Here, the solicitor's affiliation with the DRO, along with his representation of support claimants, raises the possibility that the interests of these separate clients may,

at times, conflict. We are not suggesting that any violation of the above-quoted rule has occurred here, but we do believe that the Rule was enacted to prevent the type of problem that may exist in the instant case.

The support claimant, generally, will seek the largest award of support which may be possible in the particular case, and any attorney representing such a claimant may have an obligation to advocate for such an award. However, the DRO's obligation in such a case is to recommend a support obligation that is fair, reasonable and appropriate under the law, given all of the circumstances of a case, and its attorney (solicitor) has an obligation to advise accordingly. Indeed, the DRO may sometimes even be required to recommend a *reduction* in support payments if the circumstances dictate such a result. Thus, the solicitor, when he represents support claimants at a conference before the DRO, has two different obligations to two different clients, as he does, in fact, remain the DRO's solicitor even if he is not actively advising them on the particular case. Even if such representation does not violate Rule 1.7 it *resembles* the very conduct proscribed by the Rule and it certainly creates the appearance of impropriety.

The solicitor also argues that the representation at issue has been contemplated, and implicitly approved, by a cooperative agreement which is currently in effect between the DRO, the court, the Department of Public Welfare, and the Commissioners of Bradford County. However, even if the solicitor is correct, we believe that in light of the preceding analysis of the relevant case law, Code and Rules of Conduct, the agreement cannot, by itself, legitimate representation which would otherwise be im-

proper. Furthermore, upon review of the agreement in question, we are even convinced that the solicitor's reliance upon its provisions is unfounded.

Section 3.13 of the cooperative agreement between the DRO, the Department of Public Welfare, the court, and the County Commissioners, pursuant to Title IV-D, of the Social Security Act, provides the following:

"The [DRO] shall provide legal services upon request to assist in the establishment and enforcement of support orders, as more fully set forth in attachment A. *Legal representation shall be provided by a staff attorney or provided by contract, through an organizationally and administratively independent entity, such as the district attorney or private contractor. Staff attorneys must not be under the direct supervision or control of any judge before whom they practice. The DRO must structure the employment relationship of staff attorneys to insure that they retain the professional independence necessary to aggressively represent the interests of their client (or DPW when appropriate), before the court.*" Title IV-D Agreement, signed December 20, 1990. (emphasis added)

The language above indicates the drafters' concern with respect to the very problem before the court here. The DRO must "structure the employment of attorneys" in such a way as to allow them to represent support claimants with complete "professional independence." We believe that the DRO has failed to comply with this admonition by directing *its own solicitor and regular legal adviser* to also represent support claimants.

As we interpret the language printed above, it is beyond question that the DRO is, indeed, required to ensure that support claimants have representation. However, this representation must be provided by an attorney whose professional independence is not compromised by his obligations to the judiciary, the DPW, the litigants, *or the DRO itself.* In the instant case, the solicitor's role as regular legal adviser to the DRO, potentially, at least, compromises his professional independence and it creates the appearance of impropriety for both him and the DRO. Furthermore, as set forth above, we believe his involvement in cases such as this is violative of the very Title IV-D Agreement the DRO relies on to justify his involvement.

In summary, we believe that the defendant's petition must be granted. It is perfectly acceptable for the DRO to employ a solicitor, and it is equally clear that the DRO must provide, under the IV-D Agreement, legal representation for support claimants. However, under *Horn, supra, Greater Media, supra,* the Code of Judicial Conduct, the Rules of Professional Conduct, and the Title IV-D Agreement itself, it is also clear that these separate roles should not be filled by the very same individual. Litigants have the right to expect fair and impartial decision-making by *all* branches of this court, at every stage of every proceeding, including a conference before the DRO. This expectation cannot be met unless the *appearance* of impropriety and possible prejudice, such as that which is evident here, is eradicated.

## CONCLUSION

An impermissible appearance of impropriety exists where, as here, the solicitor and legal adviser for the

DRO, which is an agency and arm of the court, represents individuals appearing before the DRO. Under the law, this appearance is symptomatic of a potential for prejudice, which must be prohibited. Consequently, the defendant's motion must be granted. The solicitor for the DRO will be disqualified and directed to remove himself as counsel of record for the plaintiff.

For the foregoing reasons, the court enters the following

## ORDER OF COURT

And now, March 13, 1992, in accord with the opinion filed this date, the defendant's petition for relief, which is in the nature of a motion to remove counsel of record, is granted. As a result, Leonard J. Frawley, Esquire, solicitor for the Bradford County Domestic Relations Office, is directed to remove himself as counsel for the plaintiff in the above-captioned matter by filing a praecipe withdrawing his appearance as counsel for the plaintiff, which withdrawal is hereby approved by the court, and he is hereby prohibited from further acting as counsel for the plaintiff in this matter.